UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVE GOSHA,

                Plaintiff,

      v.                                   Case No. 19-C-1373

ERIE INSURANCE COMPANY,

                Defendant.

## DECISION AND ORDER GRANTING MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Steve Gosha's residence and detached garage were damaged as a result of an explosion that occurred at a nearby home. Gosha reported the damage to his insurer, Defendant Erie Insurance Company. Dissatisfied with Erie's assessment of the damage, Gosha filed this lawsuit against Erie for breach of contract, bad faith, and prejudgment interest on September 20, 2019. Because the parties are citizens of different states and the amount in controversy exceeds $75,000, federal jurisdiction exists under 28 U.S.C. § 1332. The case is currently before the court on Erie's motion for summary judgment on Gosha's claims for bad faith and prejudgment interest. For the reasons that follow, Erie's motion will be granted.

### UNDISPUTED FACTS

On or about October 10, 2018, an explosion occurred at a home located at W5615 Firelane 12 in Menasha, Wisconsin. Gosha's residence, located at W5639 Firelane 12, three lots away from the site of the explosion, sustained some structural damage, particularly to the garage. Def.'s Proposed Findings of Fact (DPFOF), Dkt. No. 31, ¶¶ 1–7. Gosha's home was built in 1966, and the detached garage was added around 1970. *Id.* ¶¶ 56, 57.

At the time of the explosion, Gosha's home was insured under a policy issued by Erie. The policy covered physical injury to or destruction of the dwelling or other structure caused by an accident, including an explosion. *Id.* ¶¶ 8–9. Under the terms of the policy, Erie agreed to pay the cost of repair or replacement of a damaged home or structure, but only if the insured actually completes the repairs or replacement. In a section entitled "Loss Settlement – Dwelling Coverage – Guaranteed Replacement Cost," the policy states:

> "We" will pay no more than the actual cash value of the damage until the actual repair or replacement is completed. When the repair or replacement is completed, "we" will pay the additional amount "you" actually and necessarily spend to repair or replace the damaged part of the property.

Aff. of James M. Fredericks, Ex. 1, Dkt. No. 32-1 at 22.

Gosha notified his insurance agent of the explosion and possible physical loss to his home and detached garage on October 10, 2018, and his agent promptly notified Erie. Erie initially assigned a claims adjuster named James Kiel to perform a walk-through and inspect the property with Gosha on October 16, 2018. Kiel concluded it was necessary for an engineer to perform a structural inspection and provide recommendations for repairs in order to complete the assessment. On or about October 17, 2018, Kiel submitted a request to Nederveld, Inc., a firm that provides structural engineering design services, to inspect the home and detached garage for structural damage due to the explosion and submit a structural plan of repair. Nederveld Report, Dkt. No. 32-8 at 3. Due to its apparent complexity, Gosha's claim was reassigned to Jason Sibben, a specialist adjuster at Erie. Sibben immediately notified Gosha of the reason for the change and confirmed a date for the engineering inspection to take place. DPFOF ¶¶ 13–25.

On November 1, 2018, Nederveld engineer Steve Byron conducted the inspection of Gosha's home and garage. Byron is a civil engineer with a master's degree in structural engineering. He has been employed as a civil engineer since 2000 and has been employed by

Nederveld since 2013. Also attending the inspection were Gosha and his mother, Sibben, and Scott Diehl, a contractor Gosha invited to attend. After the inspection, Sibben prepared a preliminary estimate based on the undisputed damages that were identified during the inspection. Based on Sibben's preliminary estimate, Erie calculated the damages caused by the explosion as having a replacement/repair cost of $9,777.78, and the actual cash value of the loss at $3,934.74. *Id.* ¶¶ 26–32. Actual cash value, according to Erie, "equals the replacement cash value (RCV) less depreciation (DEP) as listed on your estimate." Frederick Aff., Ex. 7, Dkt. No. 32-7. Erie mailed the cash value payment to Gosha on November 6, 2018. In an accompanying letter, Erie explained the payment and the procedure for obtaining the original amount that was held back as the replacement cost estimate. DPFOF ¶ 33.

On or about December 6, 2018, Erie and Sibben received Nederveld's report. The report concluded that both the home and the garage sustained localized structural damage that was repairable. It also provided a general plan of the structural repairs Byron believed would return the property to its pre-explosion condition. *Id.* ¶¶ 34–36. After reviewing Nederveld's report, Sibben updated and revised Erie's estimate for Gosha's damages. Erie revised the estimate for the replacement/repair cost upward to $11,157.06 and the actual cash value to $4,635.90. Erie then mailed Gosha a check for the additional cash value of $701.16 on the same day, along with a copy of Nederveld's report and a letter from Sibben explaining the difference in valuations and the procedure he was to follow in order to receive the additional amounts held back for replacement value. The letter specifically explained that Erie's payments were based on Nederveld's report, and that if Gosha disagreed with that report, he had the right to hire his own structural engineer to inspect the property and Erie would consider any report it received from him. Sibben also advised

3

Gosha that he needed to supply supporting documentation before receiving any additional payments but that Erie would consider anything Gosha provided. *Id.* ¶¶ 38–40.

On February 12, 2019, Gosha and Diehl called Sibben at Erie and advised him that they disagreed with Nederveld's report, in particular, the conclusion that the detached garage was repairable, and that they thought Gosha was entitled to more than Erie had paid. Sibben explained that Erie's payments were based on the Nederveld report and what Byron had concluded were the direct physical losses to Gosha's property caused by or resulting from the explosion. Sibben informed Gosha that, if he disagreed with the Nederveld report, he had the right to hire his own structural engineer to inspect the property, and that Erie would consider the report once it was received. Sibben explained that Erie needed supporting documentation from Gosha before it would make any additional payments but stressed to Gosha that Erie would consider any and all documentation Gosha provided. *Id.* ¶¶ 41–45.

Erie reiterated what Sibben told Gosha in their telephone conversation of February 12, 2019, in a letter sent to Gosha on or about February 25, 2019. Gosha did not reply. On March 19, 2019, Erie sent Gosha a letter requesting an update on whether he had conducted any repairs or replaced any damaged property. Erie informed Gosha in its letter that he was entitled to the hold-back amount for the replacement/repair cost, so long as the property was actually replaced or repaired. Again, Gosha did not respond.

Gosha hired Mark Pulokas, P.E., of Focus Engineering, LLC, to perform an inspection in July 2019. Notwithstanding Gosha's insistence that the detached garage needed to be completely replaced, Pulokas concluded, like Byron, that it could be repaired. The summary section of Pulokas' report, which is dated April 13, 2020, reads:

> It is my opinion, the observations made in this report indicate conditions consistent with vibration or shaking actions that can be attributed to a shock due to a nearby

4

explosion. The damage observed appears to be limited to cosmetic damages and can be repaired without structural reinforcement or modifications. The structure of the home does not appear to have suffered damage beyond prior-existing conditions and those conditions do not appear to have been exacerbated by the explosion shock.

Frederick Aff., Ex. 10, Dkt. No. 32-10 at 5.

Despite Erie's repeated statements to Gosha that it would consider any additional information he submitted supporting a higher assessment of the damage, Gosha did not tell Erie that he had hired Pulokas to perform an inspection. Instead, he filed this lawsuit on September 20, 2019, and on May 18, 2020, almost eight months later, his attorney served a copy of Pulokas' report on Erie's attorney as part of the expert disclosure mandated by the court's scheduling order. Gosha also disclosed to Erie's attorney for the first time on May 18, 2020, a "scope of repair estimate" prepared for him by David A. Miller of Miller Public Adjusters bearing the date May 16, 2020. Miller's report lists a total cost of repair estimate for the damaged property at $141,129.61 and an actual cash value of the loss at $128,458.54. Frederick Aff., Ex. 11, Dkt. No. 32-11. Insofar as the record shows, Gosha has yet to undertake the repairs he claims are necessary to return his home and detached garage to their pre-occurrence condition.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, and other filings show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party is responsible for explaining "the basis for its motion, and identifying" the pleadings or other filings that "it believes demonstrate the absence of a genuine issue of material fact," but it is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis in original). On issues where the nonmoving party "will bear the burden of proof at a trial on a dispositive issue, the nonmoving party bears the burden

of production under Rule 56 to designate specific facts showing that there is a genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotations omitted).

## ANALYSIS

Because Gosha's claims arise under Wisconsin insurance law, Wisconsin law governs the analysis of his claims. Erie moves for partial summary judgment on Gosha's claim of bad faith and his claim that he is entitled to prejudgment interest. Erie argues that Gosha has failed to show that Erie lacked a reasonable basis for denying or delaying payment of his claim or that it knowingly or recklessly disregarded a lack of a reasonable basis for its denial or delay. Consequently, Erie argues, Gosha's bad faith claim fails as a matter of law and he is not entitled to prejudgment interest on any further amounts owed under the policy.

### A. Bad Faith

The Wisconsin Supreme Court recognized an independent and separate cause of action for bad faith in first-party insurance claims in *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). There, the court held that an insurer's duty of dealing fairly and in good faith with its insured is implied in every policy of insurance and that the breach of that duty is an actionable tort. *Id.* at 686–87. The breach of that duty, the court held, gives rise to a claim for substantial damages apart from the loss of contract benefits, including in some cases damages for emotional distress and punitive damages. *Id.* at 696–97. But a bad faith claim is not a weapon to be used by an insured to coerce or intimidate an insurer into acceding to the insured's demands.

A mere disagreement with one's insurer is clearly not enough to show bad faith. Two elements must be shown: "[1] the absence of a reasonable basis for denying benefits of the policy and [2] the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691. An insurer "may challenge claims which are fairly debatable and

6

will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Id.* at 693. But an insurer may not bury its head in the sand. In determining whether an insurer acted in bad faith, it is appropriate to consider "whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review." *Id.* at 692. An insurer's knowledge of a lack of reasonable basis can be inferred "where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Id.* at 693.

Application of these principles to the undisputed facts of the case yields the unmistakable conclusion that Erie did not engage in bad faith in its handling of Gosha's claim. First, it is clear that Erie had a reasonable basis for its assessment of Gosha's claim. After Gosha notified Erie of the damage to his residence, Erie promptly sent an adjuster, Kiel, to inspect the damage. Kiel reported the possibility of structural damage and retained an experienced engineering firm to conduct an inspection. At that point, Erie assigned Sibben, an adjuster who specialized in more complex claims. Based on his initial inspection, Sibben estimated the replacement value at $9,777.78, and the actual cash value of $3,934. A month later, after receiving and reviewing Byron's Forensic Engineering Report, Sibben increased the replacement cost value to $11,157.06, and the actual cash value to $4,635.90.

Because Gosha had not yet completed the repairs to his home and garage, he was only entitled to the actual cash value of the damage under the terms of the policy. But this does not mean that Erie would not have to pay him more when he completes the repairs. If the property is actually repaired or replaced, Erie has promised to pay the lesser of "the replacement cost," defined as "in the case of loss or damage to buildings, the cost at the time of loss to repair or replace the damaged property with new materials of like kind or quality for the same use at the described

location," or "the amount actually and necessarily spent to repair or replace the damaged dwelling [or structure]."  Dkt. No. 32-1 at 9, 22.

The policy also provides a pre-litigation mechanism for resolving any dispute over the amount of the loss.  Upon written demand of either, each party is to choose an appraiser to set the amount of the loss.  If the appraisers cannot agree, "a competent, disinterested and impartial umpire" selected by the appraisers would determine the actual cash value or the cost to repair or replace the damaged property.  *Id.* at 21.  Instead of providing Erie with documentation supporting his claim that the damage was higher, or utilizing this procedure, Gosha filed suit alleging that Erie acted in bad faith.  His claim makes no sense.

It was not unreasonable for Erie to base its assessment on Byron's report, absent any other evidence of the extent of the loss.  Byron works for Nederveld, Inc., an independent company that performs a number of services, including forensic engineering and structural engineering design services.  DPFOF ¶ 21.  At the time of the inspection, Byron had 18 years of experience as an engineer and held a master's in structural engineering.  *Id.* ¶¶ 27, 28.  He visited the site, inspected all damage pointed out by Gosha and Diehl, and took measurements and more than 300 photographs.  Byron issued a 25-page report setting forth his findings, conclusions and repair recommendations, documented with 35 photographs.  He found some of the damage to be pre-existing and explained why.  Dkt. No. 32-8.  Byron's report was independently reviewed by a Senior Forensic Engineer at Nederveld before it was sent to Erie.  DPFOF ¶ 37.

Gosha suggests that, once he and his contractor expressed their disagreement with Byron's report, it was bad faith for Erie not to have immediately ordered a reinspection or hired another engineer.  He contends that, in asking him to provide documentation supporting his view that Erie's assessment was inadequate, Erie was somehow trying to shift the insurer's obligation to investigate

8

a claim to its insured. The argument is absurd. Erie did investigate the claim and provided Gosha with a full explanation of how it arrived at its assessment. Other than an unsupported assertion from Gosha and his contractor that the detached garage needed to be replaced, an assertion that his own engineer did not support, Gosha offered no reason for Erie to question the engineering analysis it had already paid for, until after he filed suit accusing Erie of acting in bad faith. Only when the discovery deadline for expert disclosures in his lawsuit approached did Gosha disclose to Erie any documentation challenging the engineering report upon which its assessment was based.

Gosha also contends that the fact that Erie still has not changed its assessment even after receiving his expert disclosures demonstrates bad faith. But Gosha's lawsuit covers the period prior to suit, not after. Prior to commencing his lawsuit, Gosha provided no documented reason for Erie to suspect that its assessment of the damage to his home and detached garage was unreasonable. Though he provided Erie's attorney with documentation supporting his position after he filed his lawsuit, that information does not show that Erie acted in bad faith before the lawsuit began and long before Erie had access to the reports.

Moreover, even if we consider the reports of Pulokas and Miller, Erie's failure to now accede to Gosha's demand does not show bad faith. Pulokas' conclusions, as noted above, are not significantly different than Byron's. Both concluded that the damage to the home was mostly cosmetic, and that while more extensive, the damage to the detached garage was repairable. It is true that Miller's estimate of both the cost of repair and actual cash value far exceed the amount assessed by Erie. But Miller's report consists of nothing more than 20 pages of itemized entries for repairs, improvements, and additions with no narrative tying the amounts to the damage identified in the engineering reports. At most, the evidence shows a claim that is fairly debatable.

9

As *Anderson* explained, an insurer does not engage in bad faith by choosing not to pay a claim or portion of a claim that is fairly debatable. 85 Wis. 2d at 691.

In sum, based on the undisputed facts of the case, Gosha cannot prevail on a claim of bad faith. He has produced no evidence from which a reasonable jury could conclude that Erie lacked a reasonable basis for its assessment of his loss or that Erie either knew or acted in reckless disregard of the absence of a reasonable basis for its assessment. Gosha's bad faith claim will therefore be dismissed.

## B. Prejudgment Interest

Gosha's claim for prejudgment interest likewise fails. Wisconsin law requires insurers to pay claims within 30 days after written notice of a covered loss or those payments are considered overdue. Wis. Stat. § 628.46(1). However, "[a]ny payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer." *Id.* "All overdue payments shall bear simple interest at the rate of 7.5 percent per year." *Id.* Here, Gosha asserts that he provided written notice of his damage claim immediately after the explosion in October 2018 and that "Erie was also furnished with information concerning the amount of the loss." Compl. ¶¶ 25–26. Because Erie has only paid him the estimated actual cash value of the damage rather than the unidentified amount that he is seeking, Gosha also claims that he is entitled to 12 percent interest on the overdue balance. *Id.* ¶ 28.

It is unclear where Gosha's 12 percent interest rate comes from since the statute explicitly sets the rate at 7.5 percent, but that is a moot point because Gosha is not entitled to any interest at this time. Under the statute, payments are not considered overdue "when the insurer has reasonable proof to establish that the insurer is not responsible for the payment." Wis. Stat. § 628.46(1). By

10

the terms of the insurance contract, as explained to Gosha in letters from Sibben, Gosha was required to provide proof of his actual replacement costs before Erie was to pay him any amounts beyond the actual cash value. DPFOF ¶¶ 33, 45. He has not done so. His assertion that "Erie was also furnished with information concerning the amount of the loss" is belied by the undisputed fact that Gosha provided no written information to Erie that would support either a higher valuation or higher actual replacement costs than what Erie estimated until after suit was filed. Compl. ¶ 26. Because Erie has assessed and paid Gosha the actual cash value of the loss, and any additional amount owed is fairly debatable, no payments are overdue. It thus follows that Gosha is not entitled to prejudgment interest under § 628.46(1).

Erie's motion for partial summary judgment on counts two and three of Gosha's complaint (Dkt. No. 29) is therefore **GRANTED**.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of December, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge